# Supreme Court of Texas

No. 25-0474

In the Interest of A.B., a Child

On Petition for Review from the
Court of Appeals for the Second District of Texas

JUSTICE YOUNG, with whom Justice Sullivan and Justice Hawkins join, concurring in the denial of the petition for review.

This Court "has repeatedly recognized" that parental rights are "'far more precious than any property right.'" *D.V. v. Tex. Dep't of Fam. & Protective Servs.*, 722 S.W.3d 854, 858 (Tex. 2025) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758 (1982)). Termination of parental rights is "the death penalty of civil cases." *In re J.W.*, 645 S.W.3d 726, 751 (Tex. 2022) (quotation marks omitted). "The gravity of the rights at issue are of such importance that the government provides lawyers for parents, which is otherwise practically unheard of in civil litigation." *D.V.*, 722 S.W.3d at 858 (citing Tex. Fam. Code § 107.013(a)). And in another departure from ordinary civil cases, a parent not only receives free counsel but can assert an ineffective-assistance-of-counsel claim on appeal. *See In re D.T.*, 625 S.W.3d 62, 73 (Tex. 2021); *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). In light of all this, one would hope that genuine instances of ineffective

assistance would be few and far between.

That is why I find this case, as presented in this Court, to be so astounding. In the petition for review, counsel argues that Mother's "due process rights were violated due to ineffective assistance of court appointed trial counsel" and that "the ineffectiveness of trial counsel prejudiced Mother." Counsel insists that Mother "suffered fundamental legal harm" and asks that "the Court reverse the order of the trial court and remand for a new trial on the merits." But just one page before praying for a new trial, counsel asserts the following:

> Appellate counsel does not have any basis for concluding this Court would find error. For the reasons stated herein, counsel has completed a review of the record on appeal and does not believe that there are legally non-frivolous issues constituting reversible error in this appeal. As appointed counsel, the undersigned contemporaneously moves for her withdrawal as counsel.

That statement, of course, suggests that Mother's attorney is proceeding under *Anders v. California*, 386 U.S. 738 (1967). It is a radical departure from the rest of the petition, which argues—ironically, as it turns out—the merits of Mother's ineffective-assistance-of-counsel claim.

Counsel's admission was not lost on the government. In fact, counsel's concession that there is no basis to find error constitutes the State's lead argument—the entire first section of its response to the petition for review. The State quotes that language and throws it in Mother's face. Mother's attorney filed no reply, so the State's invocation of the concession remains unanswered, as are the rest of the State's arguments.

The face of the petition, therefore, leaves it unclear whether Mother's counsel intended to file a merits petition or to proceed under

2

*Anders*.  The *Anders* boilerplate is so strikingly out of sync with the rest of the petition that I suspect it was inserted by accident.  Perhaps the petition was created by opening a different case's previously filed petition, saving it as a new document, renaming it, adding some new context, and then failing to delete all the prior document's text.  The likelihood of something along these lines having happened is heightened by the use of the feminine pronoun ("moves for *her* withdrawal as counsel") when the attorney who signed the petition in this case is a man.

If so, that means counsel filed a petition in this Court without even reviewing it to notice that it includes language that is worse than prejudicial to the client's interest: it is fatal to her claim.  And it would also mean that counsel did not bother to review the government's response, which places the concession front and center.  The very fact that the government quoted and relied so heavily on the concession provided a clear opportunity to set the record straight.  On the other hand, if the concession was intentional, then counsel apparently does not know how to frame an *Anders* brief.

The rights at issue are too precious to be risked through such uncertainty.  To dispel that uncertainty, this Court sent a letter to Mother's counsel on February 27, 2026, calling attention to the tensions inherent in the petition.  We noted that "[Mother's] counsel has not filed a motion to withdraw in this Court that includes a certificate of conference and certification that he has satisfied the requirements for withdrawal."  And we included the following order:

> Accordingly, the Supreme Court of Texas orders petitioner's counsel to file a letter clarifying whether he is proceeding under *Anders*.  If counsel is proceeding under *Anders*, he should also indicate whether the requirements for an *Anders* brief have been satisfied.  *See, e.g., In re P.M.*, 520 S.W.3d 24,

3

27–28 (Tex. 2016). The letter should be filed on or before **Monday, March 9, 2026**.

That order provided a rare advocacy opportunity—but it was not just an opportunity. It was an "order," not a suggestion.

Mother's counsel filed no such clarifying letter or anything else. In other words, a Texas lawyer who has invoked the jurisdiction of the Supreme Court of Texas has ignored the Court's direct order. He is an officer of this Court, as in any other court in which he appears. All courts have the inherent power to discipline attorneys. The Constitution vests in this particular Court the power to regulate bar admission, the practice of law, and the Commission for Lawyer Discipline. *See, e.g.*, *Webster v. Comm'n for Law. Discipline*, 704 S.W.3d 478, 489–93 (Tex. 2024); *cf.* Tex. Disciplinary Rules Prof'l Conduct R. 1.01(b)(1) (noting the fundamental duty not to "neglect a legal matter entrusted to the lawyer").

As remarkable as it is, counsel's insubordination is not the worst of it. Mother's parental rights are at stake. The Court today denies Mother's petition for review, so her appeal fails and her parental rights are lost. The family is dead. Mother and her child are now strangers to each other in the eyes of the law. If the result of today's decision is erroneous—if it is an injustice that Mother's attorney could have prevented by something as basic as proofreading the petition, actually reviewing the opposing party's response, or simply responding to our order—then this case should haunt counsel's conscience far more than professional discipline ever could.

Evan A. Young
Justice

**OPINION FILED:** June 5, 2026

4